IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA ANTONIO | : | |
| MCCLENDON, | : | 1:19-cv-1832 |
| Plaintiff, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| WARDEN GENE BEASLEY, *et al.*, | : | |
| Defendants | : | |

## **MEMORANDUM**

### **September 24, 2020**

Plaintiff Joshua Antonio McClendon ("McClendon"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP"), formerly incarcerated at the Federal Correctional Institution at Allenwood, White Deer, Pennsylvania, commenced this action on October 21, 2019, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).[1]  (Doc. 1).  He names as Defendants, the United States, the BOP, and Warden Gene Beasley ("Beasley").  (Doc. 1).

McClendon alleges that "[o]n December 26, 2018 at Approx. 1:50 in Unit 1-B at U.S.P. Allenwood I…walked into the unit to my cell #116, and was followed by an inmate sitting outside the cell door who immediately pulled out a medal [sic]

---

[1]   In *Bivens*, the Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

prison made knife, and began stabbing me while someone stood outside the cell door making sure I couldn't get out.  And once I was able to get out into the unit I continued to get stabbed." (*Id.* at p. 2).  He sustained multiple puncture wounds and abrasions to, *inter alia*, his head, neck, right hand and arm, and lower back. (*Id.*).  He alleges that the failure to protect him from the assault, failure to be fully alert and respond immediately, failure to take adequate security measures, and Defendants' improper training, are actionable under the FTCA and *Bivens*.  (*Id.* at pp. 2-4).

Pending before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b) and for summary judgment pursuant to Federal Rule of Civil Procedure 56.  McClendon thrice moved for additional time to oppose Defendants' motion. (Docs. 27, 32, 35). Each time, the Court granted him additional time (Docs. 30, 33, 36) and cautioned him that his failure to respond to the motion would result in the motion being deemed unopposed and Defendants' statement of material facts being deemed admitted. His most recent extension of time expired on July 15, 2020.  He has failed to oppose the motion.  Consequently, the motion is unopposed and the facts contained in Defendants' statement of material facts (Doc.25) are deemed admitted.  For the reasons set forth below, the Court will grant Defendants' motion.

2

## I.   RULE 12(b)(1) MOTION

### A.   Standard of Review

When a defendant submits a motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a court must

determine whether the motion is a "facial" or "factual" attack.  A facial attack

considers a claim on its face and asserts that it is insufficient to invoke the subject

matter jurisdiction of the court.  *See Constitution Party of Pa. v. Aichele*, 757 F.3d

347, 358 (3d Cir. 2014).  "[A] facial attack calls for a district court to apply the

same standard of review it would use in considering a motion to dismiss under

Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party."

*Id.*  As such, a facial attack "contests the sufficiency of the pleadings." *Id.* (quoting

*In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)).  A factual attack

"is an argument that there is no subject matter jurisdiction because the facts of the

case ... do not support the asserted jurisdiction." *Id.*  A factual attack requires a

factual dispute that concerns the actual failure of a plaintiff's claims to comport

factually with the jurisdictional prerequisites.  *Id.* (alterations in original) (internal

citations omitted) (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir.

2008)).  The plaintiff bears the burden of demonstrating that the court has subject

matter jurisdiction.  *Schneller ex. rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F.

App'x 289, 292 (3d Cir. 2010) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993)).

### B. Discussion

#### 1. *Bivens* Claim

Defendants seek dismissal of the *Bivens* claims against the BOP and the United States, and against Defendant Beasley in his official capacity, based on sovereign immunity.

The doctrine of sovereign immunity bars suits against the United States or its agencies unless the government has waived that immunity. *FDIC v. Meyer*, 510 U.S. 471 (1994). The United States and its agencies have not waived immunity. Consequently, any *Bivens* claim against the United States and the BOP is plainly barred by the doctrine of sovereign immunity. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001).

As concerns the official capacity claims against Defendant Beasley, sovereign immunity extends to individual officers acting in their official capacities, absent an explicit waiver. *See Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395 (3d Cir. 2012) ("Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities). *Bivens* does not waive sovereign immunity with

respect to claims brought against federal employees sued in their official capacities. *Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."). Accordingly, McClendon's official capacity claims against Defendant Beasley are essentially claims against the United States that must be dismissed on sovereign immunity grounds. *See Brooks v. Bledsoe*, 682 F. App'x 164, 169 (3d Cir. 2017) (*per curiam*) ("To the extent that Brooks is suing the BOP employees in their official capacities, his claim fails as actions against prison officials in their official capacities are considered actions against the United States, and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."); *Bell v. Rossott*, 227 F. Supp. 2d 315, 320 (M.D. Pa. 2002) (dismissing claim against individual federal defendants sued in their official capacity because the claims are essentially made against the United States).

Based on the foregoing, Defendants' Rule 12(b)(1) motion will be granted.

## II.   **RULE 12(b)(6) MOTION**

### A.   **Standard of Review**

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). A district court ruling on a motion to dismiss may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Under the pleading regime established by [*Bell Atl. Corp. v.*] *Twombly*, 550 U.S. 544 (2007) and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the

6

> elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at
> 675, 129 S.Ct. 1937. Second, it should identify allegations that,
> "because they are no more than conclusions, are not entitled to the
> assumption of truth." *Id.* at 679, 129 S.Ct. 1937. *See also Burtch v.
> Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere
> restatements of the elements of a claim are not entitled to the
> assumption of truth." (citation and editorial marks omitted)). Finally,
> "[w]hen there are well-pleaded factual allegations, [the] court should
> assume their veracity and then determine whether they plausibly give
> rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787–88 (3d Cir. 2016) (internal

citations, quotations and footnote omitted).  Elements are sufficiently alleged when

the facts in the complaint "show" that the plaintiff is entitled to relief.  *Iqbal*, 556

U.S. at 679 (quoting FED.R.CIV.P. 8(a)(2)).  At the second step, the Court

identities those allegations that, being merely conclusory, are not entitled to the

presumption of truth. *Twombly* and *Iqbal* distinguish between legal conclusions,

which are discounted in the analysis, and allegations of historical fact, which are

assumed to be true even if "unrealistic or nonsensical," "chimerical," or

"extravagantly fanciful." *Iqbal*, 556 U.S. at 681.  Deciding whether a claim is

plausible is a "context-specific task that requires the reviewing court to draw on its

judicial experience and common sense."  *Id.*

**B.    Discussion**

1.    *Bivens* Claim

Defendants seek to dismiss the *Bivens* claim against Defendant Beasley based on a lack of personal involvement.  Individual liability will be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be predicated solely on the operation of *respondeat superior*."  *Id.*  In other words, defendants in Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence."  *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08.  A plaintiff must establish the particulars of conduct, time, place, and the person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08.  When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of, or personal involvement in, the deprivation of his or her rights, individual liability will not follow.  *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.  Beasley is not named or identified in the body of the complaint.  Rather, his name only appears in the caption.  McClendon fails to include allegations indicating that Beasley participated in the alleged

wrongs through factual allegations of personal direction or of actual knowledge and acquiescence.

With respect to Defendant Beasley's role as a supervisor, "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp*., 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).  Completely absent from the complaint are allegations that Defendant Beasley established and maintained a policy, practice or custom which directly caused the constitutional harm, or that he participated in violating McClendon's rights, directed others to violate them, or acquiesced in any unconstitutional conduct by his subordinates.

Based on the above, Defendant Beasley's motion to dismiss the *Bivens* complaint against him will be granted based on a lack of personal involvement. We recognize that before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v.*

*Mayview State Hospital,* 293 F.3d 103, 114 (3rd Cir. 2002). The Court concludes that granting McClendon leave to amend would be futile as he has failed to oppose the motion to dismiss despite being afforded an extension of time to do so. Further, as discussed *infra*, amendment would be futile because he failed to exhaust the BOP's administrative remedy procedure prior to commencing this action.

        2.   <u>FTCA Claim</u>

Defendants seek dismissal of the FTCA claim against the BOP and Defendant Beasley on the grounds that the United States is the only proper party under the FTCA. The United States Court of Appeals for the Third Circuit has set forth the following:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States." 28 U.S.C. § 1346(b)(1). As the Supreme Court has stated, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). Thus, FTCA plaintiffs must meet the criteria of § 1346(b)(1) before a district court may exercise jurisdiction.
>
> In particular, § 1346(b)(1) lists six threshold requirements that a plaintiff's claim must satisfy to confer jurisdiction. A claim must be made
>
> > "[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused

> by the negligent or wrongful act or omission of any employee of
> the Government [5] while acting within the scope of his office or
> employment, [6] under circumstances where the United States, if
> a private person, would be liable to the claimant in accordance
> with the law of the place where the act or omission occurred."
>
> *FDIC v. Meyer*, 510 U.S. 471, 477, 114 S.Ct. 996, 127 L.Ed.2d 308
> (1994) (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original). The
> cause of action in an FTCA claim, on the other hand, must come from
> state tort law. *Id*. at 478, 114 S.Ct. 996 (describing state tort law as "the
> source of substantive liability under the FTCA").

*CNA v. United States*, 535 F.3d 132, 140–41 (3d Cir. 2008), as amended (Sept. 29, 2008).  Because the United States is the only proper FTCA party, the FTCA claim against the BOP and Defendant Beasley will be dismissed.  We will consider the claim against the United States in the context of summary judgment.

## III.   RULE 56 MOTION

### A.    Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990).

A disputed fact is "material" if proof of its existence or nonexistence would affect

the outcome of the case under applicable substantive law.  *Id.*; *Gray v. York*

*Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is

"genuine" if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United*

*Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d

Cir. 1991).

     The party moving for summary judgment bears the burden of showing the

absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d

Cir. 1996).  Although the moving party must establish an absence of a genuine

issue of material fact, it need not "support its motion with affidavits or other

similar materials negating the opponent's claim." *Celotex*, 477 U.S. 317, 323

(1986). It can meet its burden by "pointing out ... that there is an absence of

evidence to support the nonmoving party's claims."  *Id.* at 325.

     Once such a showing has been made, the non-moving party must go beyond

the pleadings with affidavits, depositions, answers to interrogatories or the like in

order to demonstrate specific material facts which give rise to a genuine issue.
FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith
Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more
than simply show that there is some metaphysical doubt as to the material facts");
*Wooler v. Citizens Bank*, 274 F. App'x 177, 179 (3d Cir. 2008).  The party
opposing the motion must produce evidence to show the existence of every
element essential to its case, which it bears the burden of proving at trial, because
"a complete failure of proof concerning an essential element of the nonmoving
party's case necessarily renders all other facts immaterial."  *Celotex,* 477 U.S. at
323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).  "[T]he
non-moving party 'may not rely merely on allegations or denials in its own
pleadings; rather, its response must . . . set out specific facts showing a genuine
issue for trial.'"  *Picozzi v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011)
(quoting FED. R. CIV. P. 56(e)(2)).  "Inferences should be drawn in the light most
favorable to the non-moving party, and where the non-moving party's evidence
contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple
BMW, Inc. v. BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

If the non-moving party "fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on which that party will

bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at

322.  The adverse party must raise "more than a mere scintilla of evidence in its

favor" and cannot survive by relying on unsupported assertions, conclusory

allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458,

460 (3d Cir. 1989). The mere existence of some evidence in support of the non-

movant will not be adequate to support a denial of a motion for summary

judgment; there must be enough evidence to enable a jury to reasonably find for

the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

### B.    Statement of Material Facts

#### 1.    *Bivens* Claim

The BOP has established a multi-tier system enabling a federal prisoner to

seek formal review of any aspect of his imprisonment.  (Doc. 25, ¶ 10, citing 28

C.F.R. § 542.10-542.19).  Before seeking formal review, an inmate must attempt to

informally resolve the issue with institutional staff by completing a BP-8 form.

(*Id.* at 11, citing §542.13(a)).  If informal resolution is unsuccessful, the inmate

may present the issue to the Warden within twenty days of the date of the event

giving rise to the administrative remedy request by filing a BP-9 form.  (*Id.* at 12,

citing § 542.14(a)).  The Warden has twenty days to respond.  (*Id.* at 13 citing §

542.18).  An inmate dissatisfied with the Warden's response may submit an appeal

on a BP-10 form to the BOP Regional Director within twenty calendar days.  (*Id.* at 14, citing § 542.18).  The Regional Director has thirty days to respond.  (*Id.* at 16, citing § 542.18).  If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office, General Counsel, by submitting a BP-11 form within thirty calendar days. (*Id.* at 15, citing § 542.15(a)).  The Central Office has forty days to respond.  (*Id.* at 16, citing § 542.18).  No administrative remedy is considered fully exhausted until it is decided on its merits by the Central Office. (*Id.* at 17, citing § 542.15(a)).

McClendon has filed four administrative remedies.  (*Id.* at 18).  In remedy 911295-F1, dated August 7, 2017, he sought monetary compensation for unspecified reasons.  (*Id.* at 19).  In remedy 955835-F1, dated October 4, 2018, he claimed he had been deprived of his property for seven months. (*Id*. at 20).  In remedy 982508-F1, dated June 26, 2019, he asserted that the "SIA/SIS" failed to complete an investigation and transfer him.  (*Id.* at 21).  In remedy 994589-F1, dated October 21,2019, he alleged that he was denied access to the law library in the (SHU).  (*Id.* at 22).

### 2.   FTCA Claim

On December 26, 2018, at approximately 1:42 p.m. staff radioed for assistance in unit 1B after witnessing an inmate assaulting McClendon with "what

appeared to be a weapon." (Doc. 25, ¶ 1).  Staff witnessed an inmate assaulting McClendon on the bottom tier of the unit.  (*Id.* at 2).  Staff ordered both inmates to cease; they complied.  (*Id.* at 3).  The incident was contained at approximately 1:44 p.m.  (*Id.* at 8).  After placing both inmates in restraints, staff escorted them to health services for medical treatment.  (*Id.* at 4).  McClendon received multiple superficial puncture wounds on his abdomen, back, and facial area.  (*Id.* at 5).  The other inmate was not injured.  (*Id.* at 6).  Thereafter, staff escorted McClendon to the Special Housing Unit ("SHU").  (*Id.* at 7).  The incident was referred for an investigation by the Special Investigative Services Department.  (*Id.* at 9).

On  April 8, 2019, McClendon submitted claim number TRT-NER-2019-03657, to the Northeast Regional Office of the BOP concerning the incident on December 26, 2018, and requested $250,000.00 in damages.  (*Id.* at 23).  The Northeast Regional Office of the BOP denied the administrative tort claim on October 7, 2019, stating as follows:

> An investigation reflects on December 26, 2018, the Unit Officer observed you being stabbed by another inmate in Cell 116 in Unit 1B. Additional staff responded to a call for assistance.  As staff approached you closer, you were given orders to cease and submit to hand restraints. You were taken to Health Services for evaluation. Staff treated your multiple puncture wounds and you were  advised  to follow-up during sick call, as needed. Staff performed multiple security checks throughout the day. There is no evidence staff did not appropriately secure the unit.  There is no evidence you reported to staff

that you were at risk of physical harm prior to the incident of December 26, 2018.   A review of custody classification records reveals your custody classification was scored correctly, based upon the severity of your offense.   There is no evidence to suggest you experienced a compensable loss as the result of negligence on the part of a Bureau of Prisons employee.   Accordingly, your claim is denied.

(*Id.* at 4).

## C.   Discussion

### 1.   *Bivens* Claim

Defendants alternatively seek an entry of summary judgment on the *Bivens* claim based on McClendon's failure to exhaust administrative remedies prior to initiating this action.  (Doc. 29, p. 7).  The Prison Litigation Reform Act of 1996 (the "PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.").  The text "suggests no limits on an inmate's obligation to exhaust– irrespective of 'special circumstances.'" *Id.*  "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *See Miller v. French*, 530 U.S. 327, 337, 120 S.Ct. 2246, 147 L.Ed.2d

326 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." *Id.* at 1856-57.

It is undisputed that McClendon failed to exhaust the BOP's administrative remedy procedure. The PLRA mandates exhaustion of available administrative remedies before bringing suit and it is beyond the power of this Court to excuse compliance with that requirement. McClendon's failure to fully exhaust available administrative remedies prior to bringing this action compels an entry of summary judgment in favor of Defendants.

 2. <u>FTCA Claim</u>

The FTCA offers a limited waiver of the federal government's sovereign immunity as to negligent acts of government employees acting within the scope of their employment. 28 U.S.C. § 2671, *et seq*. Thus, in certain circumstances, prisoners may invoke the FTCA to seek damages for injuries received while in confinement. *United States v. Muniz*, 374 U.S. 150, 153 (1963). As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency, or be deemed to be denied. Section 2675(a) of Title 28, United States Code, provides in pertinent part:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal

agency and his claim shall have been finally denied by the agency in
writing and sent by certified or registered mail. The failure of the
agency to make final disposition of a claim within six months after it is
filed shall, at the option of the claimant any time thereafter, be deemed
a final denial of the claim for purposes of this section....

28 U.S.C. § 2675(a).  McClendon's compliance with the exhaustion of the FTCA

administrative procedure is not in dispute.  We therefore turn to the merits of the

claim.

In passing the FTCA, Congress waived the federal government's sovereign

immunity for negligent torts committed by employees of the United States "under

circumstances where the United States, if a private person, would be liable to the

claimant in accordance with the law of the place where the act or omission

occurred."  28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 (providing that, for

tort claims, the United States shall be liable "in the same manner and to the same

extent as a private individual under like circumstances"); *Sosa v. Alvarez-Machain*,

542 U.S. 692, 700 (2004) (stating that "[t]he FTCA 'was designed primarily to

remove the sovereign immunity of the United States from suits in tort, with certain

specific exceptions, to render the Defendants liable in tort as a private individual

would be under like circumstances.' " (quoting *Richards v. United States*, 369 U.S.

1, 6 (1962))).  As this provision makes clear, in conjunction with the jurisdictional

grant over FTCA cases in 28 U.S.C. § 1346(b), the extent of the United States'

liability is generally determined by reference to state law. *Molzof v. United States*, 502 U.S. 301, 305 (1992)

"To establish a cause of action in negligence, the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458, 461 (Pa.1998).

With regard to the first element, the BOP, under the direction of the Attorney General, has a broad statutory duty to, among other things, "provide suitable quarters and provide for the safekeeping, care ... [and] protection ... of all persons charged with or convicted of offenses against the United States." 18 U.S.C. §§ 4042(a)(2)–(3). Although "[t]he Government is not an insurer of the safety of a prisoner," *Jones v. U.S.,* 534 F.2d 53, 54 (5th Cir.1976), prison officials have a duty of "ordinary diligence to keep prisoners safe from harm," *Hossic v. U.S.,* 682 F. Supp. 23, 25 (M.D.Pa. 1987) (noting that 18 U.S.C. § 4042 (1979) establishes "ordinary diligence" standard of care for prisoner negligence suits under the FTCA); *Nickens v. U.S.*, 2006 WL 277013, *5 (M.D.Pa.2006) (same); *Belcher v. United States*, No. 4:03–CV–1252, 2007 WL 2155696, at *3 (M.D.Pa. July 25, 2007) (quoting *Hossic*, 682 F.Supp. at 25 (same)); *see also Turner v.*

20

*Miller*, 679 F.Supp. 441, 443 (M.D.Pa. 1987) ("It is unreasonable to expect that the authorities can make a penitentiary a risk-free institution.").

As to the whether the BOP breached that duty, McClendon must allege the manner in which prison officials "deviated from the general standard of care expected under the circumstances." *Martin*, 711 A.2d at 461.  Specifically, "[i]n FTCA suits brought by inmates alleging assaults by other inmates, a breach of the duty of ordinary care usually requires a showing that correctional officials knew of a potential problem between the two inmates prior to the assault. In other words, there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, and following that, there must be a showing of negligence on the part of these officials in failing to prevent the injury." *Macias v. United States*, No. 05–1445, 2006 WL 1843111, at *2 (D.N.J. June 30, 2006) (citations omitted); *see also Miller*, 679 F. Supp. at 443 (stating "the duty imposed upon a jailer vis a vis his prisoner is 'to exercise reasonable care and diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him"); *Hossic*, 682 F.Supp. at 25 (same).

The record before the Court is devoid of any evidence that prison staff were aware of a danger to McClendon and failed to protect him, or had any reason to anticipate that he was in danger and failed to take action. "'[T]here is no issue for

trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. 'Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' *Williams v. Borough of West Chester,* 891 F.2d 458, 460–61 (3d Cir.1989)." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). McClendon fails to put forth any evidence that would raise a genuine issue as to any material fact. Summary judgment in favor of the United States is appropriate.

## IV.   <u>CONCLUSION</u>

Based on the above, Defendants' motion (Doc. 22) to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and for summary judgment pursuant to Federal Rule of Civil Procedure 56, will be deemed unopposed and granted.

A separate appropriate Order will enter.